**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

F I L E D

MAR 3 1 2015

Judge Sharon Johnson Coleman
United States District Court

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | No. 13 CR 702 |
| JAVEED A. MATIN | Judge Sharon Johnson Coleman |

## PLEA AGREEMENT

1.     This Plea Agreement between the United States Attorney for the Northern District of Illinois, ZACHARY T. FARDON, and defendant JAVEED A. MATIN, and his attorney, ROBERT A. LOEB, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A) and Rule 11(c)(1)(B), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The indictment in this case charges defendant with participating in a scheme to defraud a financial institution, in violation of Title 18, United States Code, Section 1344 (Counts 1, 3, 5, 7, and 8), and causing a false statement to be made to a financial institution, in violation of Title 18, United States Code, Section 1014 (Counts 2, 4, and 6).

3.     Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.      By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count One, which charges defendant with participating in a scheme to defraud a financial institution, in violation of Title 18, United States Code, Section 1344. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.      Defendant will plead guilty because he is in fact guilty of the charge contained in Count One of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Agreement:

Beginning in or about the spring of 2007 and continuing until at least the fall of 2007, in the Northern District of Illinois, Eastern Division, and elsewhere, defendant Javeed A. Matin knowingly participated in a scheme to defraud a financial institution, and to obtain money and funds owned by and under the custody and control of a financial institution, by means of materially false and fraudulent pretenses, representations, and promises.

**Background**

At the time of the 2007 scheme, defendant was the Chief Executive Officer of Veltex Corporation, a business located in California.  U.S. Bank, Citibank, and National City Bank, now known as PNC Bank, were financial institutions with

2

branches located in the Northern District of Illinois, the deposits of which were insured by the Federal Deposit Insurance Corporation. U.S. Bank, Citibank, and National City Bank each required an applicant for a business line of credit to provide truthful information, including the business borrower's address, description of business, annual sales, information regarding the date the business started or years in business, the name of the business owner, the owner's address, the owner's percentage of ownership, the owner's annual income, and the purpose of the line of credit, which was material to the approval and funding of the line of credit.

In May 2007, defendant caused the Illinois Secretary of State's Office to reinstate as an Illinois corporation an entity called A.B.I. Inc. by causing an Application for Reinstatement to be filed with the Illinois Secretary of State's Office, including two annual reports and a statement of change of registered agent. Defendant then had no connection to A.B.I. Inc. or the individual who had initially incorporated A.B.I. Inc. In the documents defendant caused to be filed with the Illinois Secretary of State's Office, defendant caused Individual A to be identified as A.B.I. Inc.'s president and registered agent, and caused A.B.I. Inc.'s registered office to be a particular street address in Naperville, Illinois. In fact, Individual A was an employee of Veltex in California and lived in California, and Individual A was neither A.B.I.'s president nor its registered agent. Further, the address in Naperville, Illinois, was the home of another individual, and that individual had no connection to A.B.I. Inc.

**The Scheme to Defraud**

After defendant caused A.B.I. Inc. to be reinstated with false information, defendant fraudulently caused A.B.I. Inc. in the summer of 2007 to obtain three lines of credit with a total maximum amount of $200,000, as follows: from U.S. Bank, a line of credit up to the maximum amount of $50,000; from Citibank, a line of credit up to the maximum amount of $100,000; and from National City Bank, a line of credit up to the maximum amount of $50,000, by causing material false misrepresentations to be made in a credit application to each of the financial institutions concerning A.B.I. Inc., including the name and address of A.B.I. Inc.'s owner, the owner's percentage of ownership, the owner's annual income, A.B.I. Inc.'s business, its annual sales, its time period of operation, and the purpose of the line of credit.

Specifically, defendant knowingly caused to be falsely represented in the credit application to each of the three financial institutions that: A.B.I. Inc.'s owner was Individual A; Individual A was the 100% owner of A.B.I. Inc.; Individual A lived at a particular street address in Naperville, Illinois; and Individual A had annual income of $178,000. Defendant also knowingly caused to be falsely represented in each of the three credit applications that A.B.I. Inc.'s annual sales were approximately $1.325 million, and that the purpose of the line of credit was to provide A.B.I. Inc. working capital. Defendant knew that this information was false in that defendant had knowingly caused the appropriation and use of A.B.I. Inc.'s corporate identity and had knowingly caused to be fabricated all of the information

4

in the applications for purposes of deceiving the financial institutions that A.B.I. Inc. was an operating business and was creditworthy.

In the credit applications to U.S. Bank and National City Bank, defendant also knowingly caused to be falsely represented that A.B.I. Inc.'s business was marketing and consulting, and in the credit application to Citibank, defendant knowingly caused to be falsely represented that A.B.I. Inc.'s business was financial consulting. Defendant knew that this information was false. In addition, in the credit application to U.S. Bank and Citibank, defendant knowingly caused to be falsely represented that A.B.I. Inc.'s current ownership began in January 2005, and in the credit application to National City Bank, defendant knowingly caused to be falsely represented that A.B.I. Inc. had been in business for three years. Defendant knew that this information was false.

After each of the three financial institutions considered these false representations in the respective credit application and approved A.B.I. Inc.'s respective application, each institution made funds available to A.B.I. Inc. Defendant then caused Individual A to transfer the majority of the institutions' funds to Veltex Corporation bank accounts. Thus, on or about July 13, 2007, in the Northern District of Illinois, Eastern Division, defendant knowingly executed the scheme to defraud by causing to be disbursed from A.B.I. Inc.'s U.S. Bank line of credit, into A.B.I. Inc.'s U.S. Bank business checking account, the amount of $35,000. Defendant then caused these proceeds to be transferred to a Veltex

Corporation account. The proceeds were used to pay Veltex Corporation's expenses, and were not used for A.B.I. Inc.'s working capital.

Thereafter, defendant caused each of the lines of credit to go into default, and the financial institutions sustained a total loss of approximately $171,563, as follows: $45,365 owed to U.S. Bank; $92,669 owed to Citibank; and $33,529 owed to National City Bank.

## **Maximum Statutory Penalties**

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 30 years' imprisonment. Pursuant to Title 18, United States Code, Section 3561, defendant may not be sentenced to a term of probation for this offense. This offense also carries a maximum fine of $1,000,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than five years.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8.      Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9.      For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a.      **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2014 Guidelines Manual.

b.      **Offense Level Calculations.**

i.      Pursuant to Guideline § 2B1.1(a)(1), the base offense level is level 7.

ii.      Pursuant to Guideline § 2B1.1(b)(2), the base offense level is increased by 10 levels, to level 17, because the loss amount is $171,563, more than $120,000 but less than $200,000.

iii.      Pursuant to Guideline § 2B1.1(b)(1), the offense level is increased by 2 levels, to level 19, because the offense involved sophisticated means, including hiding both assets and transactions through a fictitious entity and corporate shell.

iv.    Pursuant to Guideline § 3B1.1(b)(1), the offense level is increased by 2 levels, to level 21, because defendant was an organizer, leader, manger and supervisor of Individual A in the scheme to defraud.

v.    Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vi.    In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.    **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 1 and defendant's criminal history category is I:   On or about July 17,

1997, defendant was convicted of false statement to obtain aid in the Superior Court of California, County of San Bernardino, and sentenced to 1 day in a San Bernardino County Jail facility, 36 months of probation, restitution in the amount of $5,617 to the Department of Public Social Services, and a fine totaling $500.

    d.  **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 18, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 27 to 33 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

    e.  Defendant and his attorney and the government acknowledge that the above guidelines calculations are preliminary in nature and based on facts known to the parties as of the time of this Agreement. Defendant understands that the Probation Office will conduct its own investigation of the facts and law relevant to sentencing, and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

    f.  Both parties expressly acknowledge that while none of the above guidelines calculations are binding on the Court of the Probation Office, the parties

have agreed pursuant to Fed.R.Crim.P. 11(c)(1)(B) that certain components of those calculations -- specifically, those set forth above in subparagraphs (b)(i), (b)(ii), (b)(iii), and (b)(iv) -- are binding on the parties, and it shall be a breach of this Agreement for either party to present of advocate a position inconsistent with the agreed calculations set forth in the identified subparagraph.

g.      Defendant understands that with the exception of the guideline provisions identified above as binding on the parties, the guidelines calculations set forth above are non-binding predictions, upon which neither party is entitled to relay and are not governed by Fed. R. Crim. P. 11(c)(1)(B). Errors in applying or interpreting any of the sentencing guidelines (other than those identified above as binding) may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

## Agreements Relating to Sentencing

10.     The government shall recommend that the Court impose a sentence within the applicable advisory Guidelines range. Defendant is free to recommend any sentence.

11.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the

maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

12.    Regarding restitution, defendant acknowledges that the total amount of loss owed to victims is $171,563, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant to make this restitution in the amount outstanding at the time of sentencing.

13.    Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14.    Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15.     After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment.

## Forfeiture

16.    The indictment charges that defendant is liable to the United States of America for approximately $171,563, which funds are subject to forfeiture because those funds constitute proceeds obtained from the charged offense. By entry of a

guilty plea to the indictment, defendant acknowledges that the property identified above is subject to forfeiture.

17.     Defendant agrees to the entry of a forfeiture judgment in the amount of $171,563 in that this property is subject to forfeiture.   Prior to sentencing, defendant agrees to the entry of a preliminary order of forfeiture relinquishing any right of ownership he has in these funds and further agrees to the seizure of these funds so that these funds may be disposed of according to law.   Defendant is unaware of any third party who has an ownership interest in, or claim to, the property subject to forfeiture and will cooperate with the United States during the ancillary stages of any forfeiture proceedings to defeat the claim of a third party in the event a third party files a claim.

### Acknowledgments and Waivers Regarding Plea of Guilty

#### Nature of Agreement

18.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 13 CR 702.

19.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

20.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.    **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.    The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.    If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment

13

separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

       iv.     If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

       v.     At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

       vi.     At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

       vii.     At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

       b.     **Waiver of appellate and collateral rights.**  Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742,

afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fines within the maximums provided by law, and including any order of restitution or forfeiture, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

        c.    Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights

### Presentence Investigation Report/Post-Sentence Supervision

        21.    Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at

sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charge against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

22.    Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

23.    For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified

copy of this Agreement shall be sufficient evidence of defendant☐s request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

24.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

## Conclusion

25.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

26.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by

the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

27.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

28.    Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _3/31/15_____

ZACHARY T. FARDON
United States Attorney

JAVEED A. MATIN
Defendant

KAARINA SALOVAARA
Assistant U.S. Attorney

ROBERT A. LOEB
Attorney for Defendant

18